# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1755

_____

United States of America,         *
                                       *

           Appellee,            *
                                         * Appeal from the United States

       v.                           * District Court for the
                                         * Northern District of Iowa.

Joel Leon Beal,                 *
                                       *

           Appellant.          *

_____

Submitted: October 13, 2005
Filed: December 12, 2005

_____

Before ARNOLD, MURPHY, and GRUENDER.

_____

MURPHY, Circuit Judge.

Joel Leon Beal was convicted of manufacturing or attempting to manufacture 50 grams or more of actual methamphetamine after having previously been convicted of a felony drug offense in violation of 21 U.S.C. § 841(a)(1). The district court[1] sentenced him to 360 months, and Beal appeals. He argues that the district court erred by denying his motions to suppress and for a mistrial and by limiting his cross examination of a government witness. We affirm.

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

Eric Barker, a loss prevention officer at a Wal-Mart store in Cedar Rapids, Iowa, called police on the afternoon of May 6, 2004 to report that a man had just left the store after stealing lithium batteries. He also described the suspect and his vehicle. On his way to Wal-Mart Officer Wayne Handeland noticed a vehicle driving toward him that matched the description and license number reported by Barker. Handeland stopped the vehicle and talked with the driver who was Joel Beal. Beal did not have any form of identification with him, and he gave the officer the name of his twin brother, Justin Leroy Beal. Officer Handeland learned through a background check that Justin had a suspended license, and Beal was arrested for driving with a suspended license. The police confirmed that he fit the description of the man who had taken the batteries from Wal-Mart.

The Cedar Rapids Police Department requires that an inventory search be conducted and the vehicle towed when the driver is arrested and there is no other licensed driver in the car. The officers saw a twin pack of Duracell lithium batteries on the floor of the front seat of Beal's car. In the backseat they found additional lithium batteries, a Wal-Mart sack containing baby wipes and garbage bags, a Wal-Mart receipt, Rubbermaid pitchers, starting fluid, Muriatic acid, and an overnight bag. The officers found a scale and baggies inside the bag (at the station other officers performed a thorough search of the bag and found a methamphetamine pipe and a coffee filter with residue). They found a black garbage bag in the trunk which contained 76 empty boxes and numerous blister packs for pseudoephedrine tablets, peeled lithium batteries, a coffee filter with residue, ground pseudoephedrine, and a tissue with blood on it. Also in the trunk were cans of starting fluid, a large canister of diesel starting fluid, and invoices from Altorfer and Martin Equipment.

Beal had been able to call his girlfriend, Stacy Ellis, while he was waiting for Handeland to complete his background check. Ellis was the registered owner of the vehicle, and she arrived at the scene before the officers searched it. After they began their search, Ellis told them she owned the car and offered to take custody of it. The

officers declined her offer, telling her that they had seen precursors to methamphetamine manufacturing in the car. Beal moved to suppress all evidence obtained from the vehicle, arguing that the warrantless search infringed his constitutional rights because Ellis had been present and willing to take the vehicle. The district court denied the motion, and the case proceeded to trial.

At trial the government presented the testimony of three police officers. Two testified about what was found in the vehicle, and Officer Anthony Robinson explained that the materials found were consistent with methamphetamine manufacture and distribution. The prosecutor asked Robinson what Beal's criminal history was, and he answered that Beal had two state court convictions for possession with intent to deliver methamphetamine, as well as prior theft convictions. Beal objected to mention of the theft convictions and moved for a mistrial. The district court sustained the objection but denied the mistrial motion and gave the jury a curative instruction to which Beal agreed. An expert from the Iowa Criminalistics Laboratory in Des Moines testified that tests conducted on substances found in the vehicle revealed pseudoephedrine. Representatives from Martin Equipment and Altofer testified that they sold Beal the starting fluid found in the car, and a Wal-Mart employee showed a store videotape of an individual resembling Beal in the process of purchasing pseudoephedrine. The Wal-Mart loss prevention officer who made the report leading to Beal's arrest testified that he had seen Beal steal lithium batteries and purchase Rubbermaid pitchers and baby wipes. The government also introduced evidence that Beal had no taxable income from the second quarter of 2003 through the second quarter of 2004 and that a practical yield of 53 to 67 grams of methamphetamine would have been produced from the materials in the car.

Two jailhouse informants testified for the government. Cesar Cardenas told the jury that Beal admitted to him that he had used the materials found in the vehicle to manufacture methamphetamine and that he had purchased pseudoephedrine in Chicago. Beal attempted to impeach Cardenas by questioning him about other cases

in which he had testified and in which the juries returned verdicts inconsistent with his testimony. The government objected, and the district court sustained the objection. Andre Jackson, another inmate, testified that Beal told him he had been caught with pseudoephedrine pills in his trunk, that he had used the pills to manufacture methamphetamine, and that he planned to introduce evidence that his identical twin was the individual on the Wal-Mart videotape.

Beal introduced evidence to counter the government's case. His younger brother Jeremy testified that Beal earned money fixing cars, that he used starting fluid when he worked on vehicles, and that the batteries in his camera were dead. Jeremy also testified that the individual purchasing pseudoephedrine on the Wal-Mart videotape appeared to be Beal's twin brother Justin, that Justin had methamphetamine related convictions, and that Justin had previously borrowed the car driven by Beal on the day of the arrest. Jeremy's girlfriend testified that Beal lived with them and worked on vehicles. The defense also introduced undisputed evidence that it was not Beal's blood that was in the garbage bag with the precursor materials.

Beal called other inmates to undermine the testimony by Cardenas and Jackson. Michael Bergman testified that Beal did not talk to other inmates and had not talked to Andre Jackson. Vincent Allen testified that he never heard Beal tell Cardenas about the matters he testified about and that he would have been able to hear any conversation between the two. He also testified that Beal told him he picked up the bag of empty pseudoephedrine boxes while he was out fishing or hunting for mushrooms.

The jury returned a guilty verdict, finding that Beal had manufactured or attempted to manufacture 50 grams or more of methamphetamine after a prior conviction for a felony drug offense, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846 and 851. Due to uncertainty in the law after Blakely v. Washington, 542 U.S. 296 (2004), and before United States v. Booker, 543 U.S. 220

(2005), the jury was also asked to decide certain sentencing facts beyond a reasonable doubt. It found that Beal was at least eighteen years old at the time of the offense and that he had two previous convictions for possession of methamphetamine with intent to deliver. Based on a total offense level of 37 and Beal's criminal history category VI, the court imposed a 360 month sentence.

Beal appeals, claiming that the trial court erred by denying his motion to suppress because the warrantless search was unnecessary and it infringed his Fourth Amendment rights. The government responds that the officers followed constitutionally permissible procedures when they conducted the inventory search and that the search was performed incident to a lawful arrest and with probable cause. "We will uphold the district court's denial of a motion to suppress unless it rests on clearly erroneous findings of fact or reflects an erroneous view of the applicable law." United States v. Rogers, 150 F.3d 851, 855 (8th Cir. 1998).

Vehicle searches without a warrant are per se unreasonable, subject to a few well-established exceptions. United States v. Madrid, 152 F.3d 1034, 1037 (8th Cir. 1998). "Law enforcement officers may conduct a warrantless search and inventory in order to protect the owner's property, to protect the police against claims of lost or stolen property, and to protect the police from potential danger." United States v. Hartje, 251 F.3d 771, 775 (8th Cir. 2001). Officers "may not raise the inventory-search banner in an after-the-fact attempt to justify what was . . . purely and simply a search for incriminating evidence," United States v. Marshall, 986 F.2d 1171, 1174 (8th Cir. 1993), but they are permitted to "keep their eyes open for potentially incriminating items that they might discover in the course of an inventory search, as long as their sole purpose is not to investigate a crime." Id. at 1176. The search must be reasonable in light of the totality of the circumstances. Id. at 1174.

Beal argues that the search of the vehicle was impermissible because it was performed for investigatory purposes only. Since the registered owner had arrived at

the scene of the stop and was ready and willing to take the vehicle, he asserts that there was no need for officers to impound the car and inventory its contents. Beal does not cite to any cases in which an inventory search was found to be invalid because a vehicle's registered owner appeared before it was impounded. Here, the officers followed the Cedar Rapids Police Department policy governing inventory searches when it performed the search, see United States v. Petty, 367 F.3d 1009, 1013 (8th Cir. 2004), and there is no indication that the policy permits officers to perform inventory searches in an unconstitutional manner. Beal had been alone in the vehicle at the time of his arrest, and the police could not have been sure that it was safe for Ellis to take possession of it. Hartje, 251 F.3d at 775. They also avoided any potential ownership dispute concerning the vehicle or personal property by following the departmental policy of impounding the car and inventorying its contents. Id. The district court did not err in denying Beal's suppression motion.

The government argues that even if Beal were correct in contending that there was not a permissible inventory search, a warrantless search of the automobile would have also been permissible based on probable cause and as a search incident to a lawful arrest. Beal does not challenge the lawfulness of his arrest, and the officers had the authority to search the passenger compartment of the vehicle incident to the arrest. New York v. Belton, 453 U.S. 454, 460 (1981). Because Beal fit the description of the battery thief, his vehicle had the same license number as described by Wal-Mart personnel, and a Wal-Mart sack was visible in the backseat, Handeland also had probable cause to search the vehicle for evidence of the stolen batteries. United States v. Payne, 119 F.3d 637, 642 (8th Cir. 1997). The discovery of known precursors to the manufacture of methamphetamine in both the front and backseats created probable cause to continue searching the entire vehicle for further evidence of the manufacture of methamphetamine.

Beal also argues that the district court abused its discretion in refusing to grant his motion for a mistrial based on prosecutorial misconduct. He claims that the

prosecutor improperly encouraged a witness to testify about his inadmissable prior theft convictions by asking an overly broad question about his criminal history. He asserts that evidence of the prior thefts was especially harmful to his case because there was not strong evidence of guilt and the jury could have assumed that he had previously been convicted of stealing items relating to manufacturing methamphetamine. The government argues that the defendant's rights were not so substantially affected by Officer Robinson's reference to Beal's theft convictions so as to necessitate a new trial. In determining whether a defendant has been deprived of a fair trial, we consider three factors: (1) the cumulative effect of the misconduct; (2) the strength of the properly admitted evidence of the defendant's guilt; and (3) the curative action taken by the district court. United States v. Beeks, 224 F.3d 741 (8th Cir. 2000).

The district court is in a better position to measure the effect of inadmissable testimony on a jury than an appellate court, United States v. Nelson, 984 F.2d 894, 897 (8th Cir. 1993), and we will only reverse on a showing the court abused its discretion. United States v. Hernandez, 779 F.2d 456, 458 (8th Cir. 1985). Beal is only entitled to a mistrial if mention of his theft convictions so prejudicially affected his rights that he did not receive a fair trial. Beeks, 224 F.3d at 745 (8th Cir. 2000).

The trial spanned two days and involved eighteen witnesses. The effect of Officer Robinson's comment concerning Beal's prior theft convictions was a single remark in the midst of trial. See United States v. Flute, 363 F.3d 676, 678 (8th Cir. 2004). The court also gave the jury a curative instruction which Beal had approved, and there is no indication the jury was inclined to disregard the judge's instruction. See United States v. Nelson, 984 F.2d 894, 897 (8th Cir. 1993). The jury heard overwhelming evidence of Beal's guilt, including the discovery in his possession of various precursor materials for manufacturing methamphetamine along with actual pseudoephedrine powder. We conclude the district court did not abuse its discretion by denying Beal's motion for a mistrial.

Finally, Beal argues that the district court erred by limiting his cross examination of government witness Cesar Cardenas. Cardenas was a jailhouse informant who had previously testified in at least two other trials in which defendants had been found not guilty. Beal argues that the jury verdicts in these other trials reveal a pattern of untruthfulness on the part of Cardenas and that he had a character for untruthfulness. He contends that he should therefore have been permitted to ask Cardenas about the other trials. We review evidentiary rulings regarding the proper scope of a cross examination for an abuse of discretion. United States v. Johnson, 914 F.2d 136, 138 (8th Cir. 1990).

Federal Rule of Evidence 608(b) permits the court in its discretion to allow cross examination of witnesses regarding specific instances of a witness's own conduct if the past experiences are probative of a character for untruthfulness. Even if admissable under Rule 608(b), a district court may nevertheless exclude the evidence if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

There is no way to know the basis for the jury acquittals in the other cases in which Cardenas testified. We have recognized a court's inability to"discern what the jury really meant" or the "possibility that the jury exercised lenity." United States v. Kragness, 830 F.2d 842, 859 n.15 (8th Cir. 1987). Many factors influence a verdict, including the strength of each side's case, the instructions given to the jury, and the context in which the individual witnesses testify. Introduction of evidence about jury verdicts in unrelated cases would have prolonged the trial and confused the jury. See Fed. R. Evid. 403. The district court did not abuse its discretion by limiting the cross examination of Cardenas.

For these reasons the judgment of the district court is affirmed.

_____