2022 IL App (2d) 210445
No. 2-21-0445
Opinion filed June 2, 2022

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Carroll County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) ) | Nos. 19-CF-24 19-CF-25 |
| DUSTIN N. PARTIN, | ) ) | Honorable J. Jerry Kane, |
| Defendant-Appellee. | ) | Judge, Presiding. |

PRESIDING JUSTICE BRIDGES delivered the judgment of the court, with opinion.
Justices Hutchinson and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Dustin N. Partin, was charged with possession, with intent to deliver, of 100 grams or more but less than 400 grams of methamphetamine or a substance containing methamphetamine (720 ILCS 646/55(a)(2)(D) (West 2018)) and unlawful possession of a firearm by a felon (720 ILCS 5/24-1.1(a) (West 2018)).[1] Police found evidence supporting these charges on April 14, 2019, during an inventory search of a truck they stopped in Iowa immediately after

_____

[1]Case No. 19-CF-24 concerned the methamphetamine violation, and case No. 19-CF-25 concerned unlawful possession of a weapon by a felon.

observing the driver commit a traffic infraction in Savanna, Illinois. There was an active arrest warrant for the truck's driver, Andrew Westphal. Defendant was the truck's front-seat passenger[2] and Jesse Jacobs was the back-seat passenger. The truck was registered to defendant and his wife, Nicole Partin (Nicole). Neither defendant nor Jacobs had a valid driver's license. The police decided to arrest Westphal per the active warrant. Because neither defendant nor Jacobs could lawfully drive the truck from the scene, the police decided to impound the truck pursuant to the Savanna City Code and Savanna Police Department policy. After the police decided to impound the truck, Nicole arrived at the scene before they began their inventory search. She and defendant asked the police if she could remove the truck. The police refused to release the truck to her. After defendant was charged based on contraband found in the truck, he moved to quash his arrest and suppress the evidence seized during the inventory search of the truck. The trial court granted the motion, finding that the Savanna City Code did not require the police to impound the truck and that they should have released it to Nicole, who could have lawfully driven it from the scene. The State filed a certificate of impairment and timely appeals. See Ill. S. Ct. R. 604(a)(1) (eff. July 1, 2017). At issue on appeal is whether the police could constitutionally refuse to release the truck to Nicole when she arrived before the police inventoried the truck. We determine that the police properly refused to release the truck. Thus, we reverse the trial court and remand this cause for further proceedings.

¶ 2                                    I. BACKGROUND

---

[2]Based on what was found in the truck, the police contacted the Blackhawk Area Task Force with the Illinois State Police, which obtained a warrant to search defendant's home. More contraband was found in the house.

¶ 3    In his motion to quash his arrest and suppress evidence, defendant argued that the stop and subsequent truck search were unlawful. After opening arguments at the hearing but before the State presented its evidence, the parties stipulated that "there [was] a lack of process," *i.e.*, there was no warrant for the stop or search of defendant's truck. Defense counsel argued that the absence of a warrant shifted the burden of proof to the State. The trial court clarified, "You think the burden in a motion to suppress shifts because there's a stipulation that there was no warrant?" Defense counsel confirmed that this was his position. The court asked the State if it agreed, and the State asserted that "if [defendant] shows a *prima facie* case, *** then it does shift the burden and [the State] ha[s] to present evidence why there was an arrest without a warrant." The State continued, "[I]t's up to you, Your Honor, how you want to proceed." The court replied that it would "proceed however you want to," but the court asked for "a case" to support defendant's stance on the burden of proof. The court also asked defense counsel to present testimony that the police had no search or arrest warrants for defendant when they stopped and searched his truck. Defense counsel did not address the court's request for case law but agreed to call the police officers involved in the stop and search.

¶ 4    Counsel called Savanna Police Officer Randy Craft and Lieutenant Nicholas Meeker, who testified to the circumstances surrounding defendant's arrest on April 14, 2019. Around 9 p.m. on that date, the officers were on patrol in a marked squad car near defendant's home in Savanna. Lieutenant Meeker was familiar with defendant and his truck. He testified that he saw defendant's truck in an alley in a "suspicious area." Lieutenant Meeker explained that his suspicions were "[d]ue to the area's involvement and [defendant's] other cases." Defendant's "other cases" concerned an "investigation for certain criminal activity."

¶ 5     When defendant's truck pulled out of the alley, Lieutenant Meeker directed Officer Craft to follow it. The officers had neither a warrant for defendant's arrest nor a warrant to search the truck. Nevertheless, they followed the truck as it maneuvered through Savanna. When the truck's driver made a turn without signaling, the officers decided to stop the truck. Lieutenant Meeker testified that the "stop was purely traffic." Although he and Officer Craft "wanted to stop the vehicle and identify who was in the vehicle for other investigations," he stated that they had no intent to search the truck. Lieutenant Meeker explained that "we often make contact with vehicles for Vehicle Code violations and then we're able to add the information that we gather to our investigations." He assured that, although "[he] wanted to gather information, *** had there not been a violation[,] we would not have been able to stop the [truck]."

¶ 6     Officer Craft activated the squad car's emergency lights. The truck turned onto the Savanna/Sabula Bridge and eventually stopped at a scenic overlook on the bridge. The scenic overlook is in Sabula, Iowa.[3] Lieutenant Meeker ran a registration check on the truck's license plate and learned that Nicole and defendant were registered owners. Lieutenant Meeker then approached the truck's passenger side while Officer Craft approached the driver's side. Lieutenant Meeker testified that defendant was in the front passenger seat, had nothing in his hands, and did not move toward the officers.

---

[3]Although the truck eventually stopped in Iowa, the record indicates that the traffic violation occurred in Savanna. Thus, the stop was proper. See *People v. Leinweber*, 234 Ill. App. 3d 748, 750 (1992) ("[A]n officer may make an investigatory stop outside his jurisdiction if he has reasonable grounds to believe that a suspect committed an offense while within [the officer's] jurisdiction.").

¶ 7    After defendant, Westphal (the driver), and Jacobs (the back-seat passenger) gave their names, Lieutenant Meeker asked dispatch to "run" them. Dispatch informed the officers that neither defendant nor Jacobs had a valid driver's license (Lieutenant Meeker testified that he knew from previous encounters with defendant that he did not have a valid driver's license). Specifically, Jacobs's driver's license was revoked. However, the officers were not more specific about the status of defendant's license nor explained why it was invalid.

¶ 8    Lieutenant Meeker testified that he asked Westphal to move the truck back across the bridge and onto Calhoun Street in Savanna. Lieutenant Meeker wanted the truck moved primarily for officer safety reasons and to maintain traffic flow. Westphal voluntarily moved the truck to Calhoun Street.

¶ 9    Lieutenant Meeker described Calhoun Street as a "short approximately half[-]block side street." He said that there were no roadway markings or signs prohibiting or allowing parking on the street.

¶ 10    Officer Craft was shown a photograph of the area on Calhoun Street where the truck was parked. The photograph shows the intersection of Calhoun and Main Streets in the foreground and Calhoun Street in the background. Officer Craft indicated with a red circle where Westphal parked the truck. The truck was parked close to the curb on the right side of Calhoun Street, several yards away from the intersection. It does not appear that the truck would have blocked a driveway or intersection or otherwise impeded traffic. Neither officer was asked whether the truck was legally parked on Calhoun Street.

¶ 11    Once Westphal relocated the truck, Lieutenant Meeker again approached the truck's passenger side. Lieutenant Meeker told defendant that Westphal was under arrest on an

outstanding warrant and "that [the police] would be conducting an inventory search and tow of the vehicle." At the time, only police officers were at the scene.

¶ 12    Lieutenant Meeker explained that the Savanna Police Department has a written policy for towing cars (Savanna police policy). Based on that policy, Meeker decided to have the truck towed because Westphal was under arrest, and neither Jacobs nor defendant could legally drive the truck. Lieutenant Meeker asserted that, essentially, "[t]he policy states that officers shall conduct an inventory search of vehicles that are being towed at the request of the Savanna Police Department."

¶ 13    After Lieutenant Meeker announced his decision to tow and impound the truck, he asked Westphal to exit the truck—Westphal complied. The officers handcuffed Westphal and placed him in the squad car's back seat. After Westphal was secured, Lieutenant Meeker asked defendant to step out of the truck. Lieutenant Meeker patted down defendant for weapons and found nothing. After removing Jacobs from the truck, Lieutenant Meeker told defendant and Jacobs that they were free to leave. Jacobs left.

¶ 14    Defendant asked Lieutenant Meeker if he could retrieve some personal items from the truck before the truck was inventoried and towed. Lieutenant Meeker allowed defendant to do so. Defendant retrieved his wallet and a second set of keys for the truck. Defendant then locked the truck, advising Lieutenant Meeker that he would unlock the vehicle when the tow truck arrived. Lieutenant Meeker asked defendant for the keys to perform the inventory search. Defendant refused to give Lieutenant Meeker the keys. The officers then explained the Savanna police policy to defendant and its procedures for impounding and inventorying vehicles. They advised defendant that he could be arrested for obstructing the police if he prevented them from inventorying the truck. In response, defendant unlocked the vehicle. While Lieutenant Meeker was advising defendant about departmental policy, Nicole arrived at the scene. When she arrived, Lieutenant

Meeker had already decided to have the truck towed. Defendant asked Lieutenant Meeker if Nicole could remove the truck. Lieutenant Meeker refused to release the truck to Nicole. Lieutenant Meeker testified that although the police are not required to release vehicles to "an outside subject," the police "could" release a vehicle to a registered owner with a valid driver's license.

¶ 15    Defendant gave Lieutenant Meeker the keys. Lieutenant Meeker inventoried the truck using inventory and towing forms he kept in the squad car. Lieutenant Meeker explained that the purposes for inventorying a vehicle before towing it are to (1) protect the subject's property, (2) protect the police from claims of stolen or damaged property, and (3) ensure that nothing in the vehicle could injure the police.

¶ 16    After Lieutenant Meeker inventoried the truck, defendant was arrested based on contraband found in the truck.[4]

¶ 17    During the cross-examination of Lieutenant Meeker, the State introduced (1) the Savanna police policy and (2) the Savanna City Code governing the impounding and towing of vehicles. Lieutenant Meeker testified that he was aware of the Savanna City Code and the Savanna police policy during the traffic stop on April 14, 2019. He understood that any person arrested for an offense listed in the ordinance "will have their *** car towed by the officer [and] impounded by a towing agency."

¶ 18    As relevant here, the Savanna City Code provided:

---

[4]Soon after the inventory began, the police had to pause, as a pipe bomb was found in the truck. The inventory continued after the Quad City Bomb Squad was called to the scene and defused the bomb.

"Any vehicle, regardless of whether the registered owner *** is operating said vehicle, within the corporate limits of [Savanna], shall, under this section, be subject to seizure and impoundment, at any time the vehicle is used in accordance with one or more of the following offenses:

\* \* \*

(G) Driving while a driver's license *** is suspended or revoked *** except that vehicles shall not be subjected to seizure or impoundment if the suspension is for an unpaid citation (parking or moving); or

\*\*\*

(I) Operation or use of a vehicle by a person against whom a valid warrant is outstanding for which the city of Savanna is within geographical limits[.]" Savanna City Code § 6-11-5 (adopted Apr. 28. 2015).

¶ 19    As relevant here, the Savanna police policy provided:

"The purpose of [the] policy is to give officers guidelines for towing of motor vehicles in the City of Savanna."

¶ 20    The policy also provided:

"Any person arrested for an offense of *Savanna City Code 6-11-5* will have their car towed by the Officer and impounded by the towing agency under 625 ILCS 5/4-203(e) [(West 2018)]. *** Inventories will be performed in accordance with Policy 3-165."[5] (Emphasis in original.)

---

[5]Policy 3-165 was not admitted at the hearing or included in the record on appeal.

¶ 21    The defense also called Nicole. She testified that defendant phoned her around 9 p.m. on April 14, 2019, telling her that she needed to come to get him and the truck. Her sister gave her a ride to the scene, approximately two or three minutes away. Nicole saw several officers and squad cars surrounding defendant and the truck. She overheard officers talking to defendant "concerning the keys to the truck." The officers wanted defendant to unlock the truck and said he would be arrested if he did not give them the keys or unlock the truck. Nicole asked an officer at the scene if she could take the truck home. The officer refused. Nicole testified that, at the time, she had a valid driver's license and insurance on the truck.

¶ 22    In its written order granting defendant's motion to quash and suppress, the trial court found, among other things, that (1) while on patrol, the officers recognized defendant and his truck and "knew who they were following," (2) the officers conducted a traffic stop after observing the truck make a turn without signaling, (3) after stopping the truck, the officers identified the driver and passengers, (4) the officers learned that "defendant's license to drive [was] suspended," and (5) before the search began, Nicole arrived at the scene as Lieutenant Meeker was talking to defendant about an inventory search. The court concluded that (1) the truck was properly stopped for a traffic offense and (2) the impoundment and inventory of the truck did not qualify as a search incident to arrest. The court next considered whether the impoundment and inventory met the exception to the warrant requirement for searches. The court determined that the impoundment and inventory of the truck were improper because (1) the Savanna City Code provided for discretionary, not mandatory, impoundment, and (2) Nicole arrived on the scene ready, willing, and able to remove the truck. Because the impoundment was improper, the trial court quashed defendant's arrest and suppressed the evidence seized.

¶ 23                                II. ANALYSIS

¶ 24     At issue in this appeal is whether the impoundment and inventory search of the truck were constitutional. However, we must first address (1) defendant's failure to file a brief, (2) the burden of proof that applies in suppression cases, and (3) our standard of review.

¶ 25                             A. Defendant Did Not File a Brief

¶ 26     While we may not reverse summarily because defendant did not file a brief, we need not serve as defendant's advocate or search the record for a basis to affirm. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976); *Orava v. Plunkett Furniture Co.*, 297 Ill. App. 3d 635, 636 (1998). If the record is simple and the reviewing court can easily decide the issues without the aid of an appellee's brief, the court should resolve the merits of the appeal; in other cases, the court may reverse the judgment of the trial court only "if the appellant's brief demonstrates *prima facie* reversible error and the contentions of the brief find support in the record." *Talandis*, 63 Ill. 2d at 133; *Orava*, 297 Ill. App. 3d at 636.

¶ 27     The issue raised here cannot be easily decided. Therefore, the question is whether the State's brief establishes *prima facie* reversible error. " '*Prima facie* means, "at first sight, on the first appearance, on the face of it, so far as can be judged from the first disclosure; presumably; a fact presumed to be true unless disproved by some evidence to the contrary." [Citation.]' " *Talandis*, 63 Ill. 2d at 132 (quoting *Harrington v. Hartman*, 233 N.E.2d 189, 191 (Ind. App. 1968)).

¶ 28     As explained below, we determine that the State's brief establishes *prima facie* reversible error in the grant of defendant's motion to quash and suppress.

¶ 29                                 B. Burden of Proof

¶ 30     Before presenting evidence at the hearing on defendant's motion to quash and suppress, the parties stipulated that the police had no warrant to arrest defendant or search his truck. Defendant then suggested to the trial court that because there was no warrant, the burden shifted

to the State to establish that the inventory search of the truck was constitutional. The court was taken aback by this approach, and rightfully so.

¶ 31    "The defendant bears the burden of proof at a hearing on a motion to suppress." *People v. Gipson*, 203 Ill. 2d 298, 306 (2003). "A defendant must make a *prima facie* case that the evidence was obtained by an illegal search or seizure." *Id.* at 306-07. "If a defendant makes a *prima facie* case, the State has the burden of going forward with evidence to counter the defendant's *prima facie* case." *Id.* at 307. The burden of proving an exception to the warrant requirement rests with the State. *People v. Butler*, 2015 IL App (1st) 131870, ¶ 33. "However, the ultimate burden of proof remains with the defendant." *Gipson*, 203 Ill. 2d at 307.

¶ 32    To sustain his initial burden, the defendant must make a *prima facie* case that he was doing nothing unusual at the time of his arrest. *People v. Liekis*, 2012 IL App (2d) 100774, ¶ 20. The mere fact that the police did not have a warrant is insufficient to shift the burden of proof to the State. See *id.* ¶¶ 21-22.

¶ 33    Here, under *Liekis*, the mere fact that the police did not have a warrant to arrest defendant or search his truck did not shift the burden of proof to the State. See *id.* ¶¶ 21-22 (the defendant's testimony (1) as to where and when the police stopped her, (2) "that there was no warrant for her arrest," and (3) that she was arrested after submitting to field sobriety tests did not establish a *prima facie* case and shift the burden of proof to the State). Rather, the burden of proof shifts to the State when the defendant establishes that he was doing nothing unusual at the time he was arrested. *Id.* ¶ 20.

¶ 34                                    C. Standard of Review

¶ 35    We employ a two-part standard in reviewing the propriety of a ruling on a motion to quash and suppress. *People v. Miller*, 2014 IL App (2d) 120873, ¶ 25. "The trial court's findings of fact

are upheld unless they are against the manifest weight of the evidence." *Id.* "Findings are against the manifest weight of the evidence when they are unreasonable, arbitrary, or not based on the evidence or when the opposite conclusion is clearly evident." *Id.* "However, the ultimate issue of whether to quash and suppress is a legal one subject to *de novo* review." *Id.*

¶ 36    The trial court found, as relevant here, that (1) while on patrol, the officers recognized defendant and his truck and "knew who they were following," (2) the officers conducted a traffic stop after observing the truck make a turn without signaling, (3) after stopping the truck, the officers identified the driver and passengers, (4) the officers learned that "defendant's license to drive [was] suspended," and (5) before the search began, Nicole arrived at the scene as Lieutenant Meeker was talking to defendant about an inventory search. We cannot conclude that any of these findings are against the manifest weight of the evidence. Accordingly, we consider *de novo* whether defendant's arrest should have been quashed and the evidence suppressed.

¶ 37                          D. Constitutionality of Search of Truck

¶ 38    The State argues that the inventory search of the truck was proper.[6] The United States Constitution and the Illinois Constitution protect every person from unreasonable searches and

---

[6]The State notes that, given the trial court's favorable findings on those points, it is not addressing whether Westphal's failure to signal the turn provided the police with a valid basis to stop the truck (see *City of Highland Park v. Kane*, 2013 IL App (2d) 120788, ¶ 15 (a traffic violation provides a valid basis to stop a vehicle) or whether the inventory search was a proper search incident to an arrest (see *People v. Mason*, 403 Ill. App. 3d 1048, 1053 (2010) (a search of a vehicle incident to an arrest is proper if (1) the unsecured arrestee is within reaching distance of the passenger compartment of the vehicle or (2) it is reasonable to believe that evidence concerning

seizures conducted by the government. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. Under the limited-lockstep doctrine, we generally interpret article I, section 6, of the Illinois Constitution according to the United States Supreme Court's interpretation of the fourth amendment of the United States Constitution. *People v. Holmes*, 2017 IL 120407, ¶ 24.

¶ 39    In most cases, a search is reasonable only if the government first obtains a warrant supported by probable cause. *People v. Stehman*, 324 Ill. App. 3d 54, 58-59 (2001). There is no question that the police did not have a warrant to search the truck. However, that does not automatically make the inventory search of the truck constitutionally unreasonable. A warrantless search is *per se* unreasonable only if it does not fall within one of the few exceptions to the warrant requirement. *People v. Cregan*, 2014 IL 113600, ¶ 25. One of those exceptions is an inventory search of a lawfully impounded vehicle. *Gipson*, 203 Ill. 2d at 304.

¶ 40    The State argues that the impoundment of the vehicle was proper. Impoundment—or seizure—of a vehicle is separate and distinct from the inventory—or search—of that vehicle. *People v. Nash*, 409 Ill. App. 3d 342, 347 (2011). Both the impoundment and the inventory search must be constitutionally reasonable. *Id.* "The threshold issue in considering whether the police have conducted a valid inventory search incident to a tow is whether the impoundment of the vehicle was proper." *Id.* at 348. Accordingly, we first consider whether the impoundment was reasonable.

¶ 41                                  1. Impoundment

¶ 42    "Law enforcement [has] the authority, *** pursuant to its community[-]caretaking function, to seize and remove from the streets vehicles impeding traffic or threatening public safety

---

the recent arrest can be found inside the vehicle).

and convenience." *People v. Mason*, 403 Ill. App. 3d 1048, 1054 (2010). "That a defendant's car would be left unattended is not a sufficient reason for impoundment unless the vehicle is illegally parked." *Id.* However, "[w]here the police impound a vehicle based on a cognizable reason, an inventory search pursuant to the tow is justified." *Id.* "Although the State's evidence must support a finding that the decision to tow was based on a reasonable procedure, there is no requirement that the State present evidence of written procedures." *Id.* at 1054-55.

¶ 43　　The State argues that the Savanna City Code and the Savanna police policy gave the police a "cognizable reason" to impound the truck. In addressing the State's claim, we begin by examining the Savanna City Code. In doing so, we are guided by the well-settled rules governing the construction of ordinances.

¶ 44　　" '[T]he same rules which govern the construction of statutes are *** applied in construing municipal ordinances.' " *International Ass'n of Fire Fighters, Local 50 v. City of Peoria*, 2022 IL 127040, ¶ 11 (quoting *City of East St. Louis v. Union Electric Co.*, 37 Ill. 2d 537, 542 (1967)). The fundamental rule in interpreting an ordinance is to ascertain and give effect to the drafter's intent. *Id.* ¶ 12. The best indicator of that intent is the ordinance's language given its plain and ordinary meaning. *Id.* We must construe the ordinance so that no part of it is rendered meaningless or superfluous. *Id.* The construction of an ordinance presents a question of law that we review *de novo*. *Id.* ¶ 11.

¶ 45　　With these principles in mind, we turn to the Savanna City Code. Section 6-11-5(I) provides that "*[a]ny vehicle *** shall *** be subject to seizure and impoundment*" when that vehicle is driven in Savanna by a person who has an outstanding arrest warrant "for which the city of Savanna is within geographical limits." (Emphasis added.) Savanna City Code § 6-11-5(I) (adopted Apr. 28, 2015). Here, Westphal was driving the truck and had an outstanding arrest

warrant. Under section 6-11-5(I), the fact that Westphal was not the owner of the truck is immaterial. Moreover, nothing suggests that Savanna was not within the arrest warrant's geographical limits. Rather, the fact that Savanna police officers arrested Westphal on that warrant suggests the exact opposite. The Savanna police policy—the stated purpose of which is to guide the police in deciding when to tow and impound vehicles—specifically directs the police to "tow" the "car" of "[a]ny person arrested" under section 6-11-5 of the Savanna City Code.

¶ 46    The trial court determined that "shall *** be subject to seizure and impoundment" indicates that the impoundment of the truck was discretionary. The court further reasoned that—because Nicole was ready, willing, and able to drive the truck from the scene—the police not only could have but *should have* released the truck to her. We agree and disagree.

¶ 47    We agree with the trial court that "shall *** be subject" connotes that the police have the discretion to decide whether to have a vehicle impounded and towed. But an ordinance concerning the impoundment of a vehicle *must* be discretionary to pass constitutional muster. See *Nash*, 409 Ill. App. 3d at 354 (citing *Harrington v. Heavey*, No. 04 C 5991, 2006 WL 3359388, at *5 (N.D. Ill. Nov. 16, 2006)). That said, unlike the trial court, we do not conclude that the police were required to exercise their discretion in favor of defendant. Rather, the circumstances justified their decision to tow and impound the truck.

¶ 48    *Nash* and *Mason* are instructive here. In both cases, the defendant was arrested following a traffic stop and could not show proof of liability insurance for the vehicle. *Nash*, 409 Ill. App. 3d at 343; *Mason*, 403 Ill. App. 3d at 1050. No one else at the scene produced a valid driver's license or proof of liability insurance for the vehicle. *Nash*, 409 Ill. App. 3d at 350; *Mason*, 403 Ill. App. 3d at 1055. Since state law prohibited the operation of uninsured vehicles on public roads,

the officers had to tow and impound the vehicle. *Nash*, 409 Ill. App. 3d at 350; *Mason*, 403 Ill. App. 3d at 1055.

¶ 49    The facts here are analogous to *Nash* and *Mason*. Westphal could not remove the truck because he was under arrest. Neither defendant nor Jacobs could drive the truck because neither had a valid driver's license. Jacobs's license was revoked, and the trial court found that defendant's license was suspended. Although defendant's license could have been suspended for unpaid traffic or parking tickets—and, thus, the truck would not have been subject to impoundment under the Savanna City Code (Savanna City Code § 6-11-5(G) (adopted Apr. 28, 2015))—defendant bore the burden of presenting that evidence. See *Nash*, 409 Ill. App. 3d at 355 (impoundment of the vehicle upon the defendant's arrest was proper because the teenage passenger did not offer proof that she had a valid driver's license and liability insurance on the vehicle to lawfully remove the car from the scene). Since neither defendant nor Jacobs could lawfully remove the truck, the officers here, like those in *Nash* and *Mason*, had justification to impound the truck.

¶ 50    The possibility that the truck was legally parked on Calhoun Street does not warrant a different conclusion. In both *Nash* and *Mason*, the vehicles either were (1) stopped "in front of a house in a residential area," where they were "not blocking traffic or a driveway" (*id.* at 344), or (2) "properly" parked (*Mason*, 403 Ill. App. 3d at 1050). Although the *Nash* and *Mason* courts noted the general proposition that leaving a vehicle unattended does not justify its impoundment unless the vehicle is illegally parked (*Nash*, 409 Ill. App. 3d at 348; *Mason*, 403 Ill. App. 3d at 1054), the courts' analyses of the impoundments in those cases did not consider how the vehicles were parked (presumably, neither defendant raised the issue). Again, the defendant bears the burden of establishing that the impoundment was unreasonable. *Gipson*, 203 Ill. 2d at 306-07. Although defendant here, like the defendants in *Nash* and *Mason*, presented evidence that the truck

was not impeding traffic where it was parked on Calhoun Street, he failed to offer any direct evidence on that point or argue that the impoundment was unreasonable because the truck was parked legally. Moreover, as in *Nash* and *Mason*, the police had a "cognizable reason" to tow the truck, *i.e.*, no one at the scene could lawfully remove it. *Nash*, 409 Ill. App. 3d at 351; *Mason*, 403 Ill. App. 3d at 1054-55. Even if the truck were legally parked, that fact would not undercut the grounds on which the officers decided to impound the truck.

¶ 51    The trial court determined that the police should not have towed and impounded the truck because Nicole arrived at the scene and could have moved the truck. Even if Nicole had a valid driver's license—which defendant never established—we would not conclude that the police were required to release the truck to Nicole after they had decided to tow and impound the truck.[7] In *Nash*, there was a similar situation. In assessing whether the impoundment of the defendant's vehicle was proper, we found it immaterial that a teenage passenger in the defendant's vehicle *may have had* a valid driver's license and *may have been* able to produce liability insurance. *Nash*, 409 Ill. App. 3d at 355. The defendant had the burden to prove that the teenager was licensed and insured, which the defendant did not do. *Id.* We also remarked that "it would be unreasonable and unduly burdensome to require [an] officer to remain at the scene and wait an indeterminate period for someone to possibly return and cure the conditions that mandated the impoundment." *Id.*

¶ 52    This case presents an even stronger basis to uphold the policy concerns we mentioned in *Nash*. As in *Nash*, when the police decided to tow and impound the truck, no one at the scene could have lawfully moved the truck. Unlike in *Nash*—where the teenager was a passenger in the stopped

---

[7]We can assume that the truck was insured, as the police were ready to release the truck to defendant or Jacobs if either man had a valid driver's license.

vehicle—Nicole arrived at the scene *after* the officers decided to impound the truck. Although Nicole may have been licensed and insured, requiring the officers to wait for a qualified person like her to arrive before deciding whether to tow and impound the truck would unduly burden the officers. See *id.* There was no evidence that the police were aware that defendant called Nicole, much less that she was qualified to remove the truck. Moreover, as the State observes, to conclude that the police should have released the truck to Nicole would essentially reward defendant for locking the truck, delaying the inventory search, and impeding the police in fulfilling their official duties. See *People v. Stoops*, 313 Ill. App. 3d 269, 277 (2000) (Steigman, J., specially concurring) ("Trial courts must never reward a defendant's obstructionist behavior.").

¶ 53    Supporting our position that Nicole's arrival at the scene was immaterial is *United States v. Beal*, 430 F.3d 950 (8th Cir. 2005). There, the police stopped the defendant's vehicle because it matched the description of a vehicle involved in the theft of batteries from a Walmart. *Id.* at 952. The defendant, who was not carrying any identification, gave the officer who stopped him his twin brother's name. *Id.* The twin brother's driver's license was suspended; thus, the defendant was arrested for driving on a suspended license. *Id.* The police department's tow policy required the police to impound a vehicle when the driver was arrested for driving on a suspended license and no other licensed driver could remove the car. *Id.* Before the officers began an inventory search of the defendant's vehicle, the defendant's girlfriend—the vehicle's registered owner—arrived at the scene. *Id.* After the officers began inventorying the vehicle, the girlfriend told the officers that she owned the car and asked the officers if she could take custody of the vehicle. *Id.* The officers refused to release the vehicle to the girlfriend, advising her that their inventory search had uncovered evidence of drug manufacturing. *Id.* The defendant was subsequently charged with

various drug offenses. *Id.* The defendant moved to quash his arrest and suppress the evidence seized, the trial court denied the motion, and the case proceeded to a trial. *Id.*

¶ 54 After the defendant was convicted and sentenced, he appealed, arguing, among other things, that the court should have granted his motion to quash and suppress. *Id.* at 954. The defendant claimed that the impoundment of the vehicle was unreasonable because his girlfriend arrived at the scene and was ready, willing, and able to remove the car. *Id.* The appellate court disagreed:

> "[The defendant] does not cite to any cases in which an inventory search was found
>
> to be invalid because a vehicle's registered owner appeared before it was impounded. Here,
>
> the officers followed [their police department's] policy governing inventory searches when
>
> it performed the search [citation], and there is no indication that the policy permits officers
>
> to perform inventory searches in an unconstitutional manner. [The defendant] had been
>
> alone in the vehicle at the time of his arrest, and the police could not have been sure that it
>
> was safe for [the girlfriend] to take possession of it. [Citation.] [The police] also avoided
>
> any potential ownership dispute concerning the vehicle or personal property by following
>
> the departmental policy of impounding the car and inventorying its contents. [Citation.]"
>
> *Id.*

¶ 55 Like in *Beal*, we are unaware of any authority that required the police to release the truck to Nicole when she arrived after they decided to impound the truck. Moreover, as in *Beal*, the officers decided to impound the truck based on established procedures, specifically section 6-11-5 of the Savanna City Code and the Savanna police policy. The latter was put in place "to give officers guidelines for towing of motor vehicles in the City of Savanna." The policy provided that "[a]ny person arrested for an offense of Savanna City Code 6-11-5 will have the car towed by the

Officer and impounded." Defendant has not argued, and nothing suggests, that the Savanna City Code or the Savanna police policy is unconstitutional.[8] When the officers decided to impound the truck, no one was at the scene except them and the three men in the truck. As noted, none of the three men could lawfully move the truck from the scene. Additionally, as noted in *Beal*, the officers could not be certain that it was safe to release the truck to Nicole when she asked to take possession of it. Indeed, the truck turned out to be a potential hazard, as the officers found a pipe bomb in the truck, which the Quad City Bomb Squad had to defuse.

¶ 56                                    2. Inventory Search

¶ 57    Having found that the impoundment of the truck was proper, we next consider whether the inventory of the truck's contents was also proper. As noted, "[w]hen a vehicle is lawfully impounded, an inventory search is a judicially created exception to the warrant requirement." *Nash*, 409 Ill. App. 3d at 348. Warrantless inventory searches serve three objectives: (1) protecting the owner's property, (2) protecting the police from claims of lost or stolen property, and (3) protecting the police from potential danger. *Id.* From these three objectives, *Nash* fashioned a three-part test. See *People v. Hundley*, 156 Ill. 2d 135, 138 (1993).

> "[The t]hree criteria [that] must be met for a valid warrantless inventory search of a vehicle [are]: (1) the original impoundment must be lawful; (2) the purpose of the inventory search must be [(a)] to protect the owner's property, [(b)] to protect the police

---

[8]Cities may enact ordinances that punish vehicle owners when they allow fugitives to drive the owners' cars. See *Towers v. City of Chicago*, 173 F.3d 619, 625 (7th Cir. 1999) (municipality may enact ordinances that sanction a vehicle owner who allows his vehicle to be used by others who commit crimes).

from claims of lost, stolen, or vandalized property, and [(c)] to guard the police from danger; and (3) the inventory search must be conducted in good faith pursuant to reasonable standardized police procedures and not as a pretext for an investigatory search."

*Nash*, 409 Ill. App. 3d at 348.

¶ 58    We have already concluded that the decision to tow and impound the truck was proper, as at the time, no one at the scene could lawfully move the truck. As to the second criterion, Lieutenant Meeker testified that the Savanna police inventory towed vehicles to (1) protect the subject's property, (2) protect the police from claims of stolen or damaged property, and (3) ensure that nothing in the vehicle could injure the police. Regarding the third and final criterion, the location of defendant's truck and Lieutenant Meeker's familiarity with defendant's criminal past and admitted curiosity about defendant's present activities might suggest that the officers had alternative reasons for following the truck. However, the evidence at the hearing indicated that the truck's stop was not a pretext for a search. Rather, the officers were not planning to search the truck when they executed the stop. Had Westphal not failed to signal a turn, the officers would not have stopped the truck. Moreover, the officers were willing to release the truck to defendant or Jacobs if either had a valid driver's license. Lieutenant Meeker allowed defendant to reenter the truck to retrieve some personal items before inventorying the truck. Further, the officers followed standard police procedures in conducting the inventory search. "[A] single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront." (Internal quotation marks omitted.) *Gipson*, 203 Ill. 2d at 304. Lieutenant Meeker testified that he inventoried the truck following Savanna police procedures, using forms for impounding and

towing vehicles. "[A] police officer's testimony that he was following standard procedure is generally deemed to be sufficient." *Id.* at 304-05. We hold that the inventory search was proper.

¶ 59                                III. CONCLUSION

¶ 60    For the reasons stated, we (1) reverse the judgment of the circuit court of Carroll County granting defendant's motion to quash and suppress, and (2) remand this cause for further proceedings.

¶ 61    Reversed and remanded.

**No. 2-21-0445**

| | |
|---|---|
| **Cite as:** | *People v. Partin*, 2022 IL App. (2d) 210445 |
| **Decision Under Review:** | Appeal from the Circuit Court of Carroll County, Nos. 19-CF-24, 19-CF-25; the Hon. John Jerry Kane, Judge, presiding. |
| **Attorneys for Appellant:** | Aaron Kaney, State's Attorney, of Mt. Carroll (Patrick Delfino, Edward R. Psenicka, and David S. Friedland, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| **Attorneys for Appellee:** | No brief filed for appellee. |