2023 IL App (3d) 230060

Opinion filed October 19, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee, Illinois, |
| Plaintiff-Appellant | ) ) | |
| v. | ) ) | Appeal No. 3-23-0060 Circuit No. 22-CF-332 |
| CHRISTOPHER D. SMITH, | ) ) ) | Honorable Kathy S. Bradshaw-Elliott, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE DAVENPORT delivered the judgment of the court, with opinion.
Justices McDade and Peterson concurred in the judgment and opinion.

_____

**OPINION**

¶ 1        The State appeals from the trial court's order granting defendant Christopher D. Smith's motion to suppress evidence gathered from a vehicle during a purported inventory search performed by the Kankakee Police Department. The State contends the trial court erred because the vehicle was validly seized and inventoried pursuant to article 36 of the Criminal Code of 2012 (Code) (720 ILCS 5/art. 36 (West 2022)) and standard department policy implementing that article. Alternatively, the State asserts the search was valid because the police had probable cause to search under the automobile exception to the fourth amendment. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3        On June 10, 2022, Kankakee patrol officer Robert Huebner attempted to stop a vehicle without a front license plate shortly after it left a gas station. Another officer had informed Huebner that defendant and Jaylin Coffie, both suspects in a May 13, 2022, shooting that occurred at Coffie's residence in Kankakee, were in the vehicle. The vehicle fled, disregarding a traffic light and a stop sign. Per department policy, Huebner did not pursue. Instead, Huebner and another officer drove to Coffie's residence. About seven minutes after the attempted stop, the vehicle arrived at the residence. Defendant and Coffie exited the rear compartment of the vehicle, while its driver and registered owner, Tamesha Foy, remained in the vehicle. Huebner told Foy he was going to tow the vehicle for an "Article 36 seizure," as it had been used to commit the offense of aggravated fleeing and eluding. See *id.* § 36-1(a)(5) (vehicle is subject to forfeiture when used with the knowledge and consent of the owner in the commission of aggravated fleeing or attempting to elude a police officer); 625 ILCS 5/11-204.1(a)(4) (West 2022) (aggravated fleeing and eluding based on disobedience of two or more official traffic control devices). Before the tow truck arrived, Huebner searched the vehicle and discovered a loaded 9-millimeter pistol under a bag where defendant had been seated. Defendant admitted ownership of the firearm. The officers arrested him.

¶ 4                                    A. The Charge

¶ 5        A grand jury indicted defendant on one count of aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5), (C) (West 2022)). The indictment alleged defendant, who did not have a valid firearm owner's identification card or concealed carry license, knowingly carried in a vehicle the firearm, which was uncased, loaded, and immediately accessible.

¶ 6                           B. Defendant's Motion to Suppress

2

¶ 7        Defendant moved to suppress the evidence gathered during the search. Defendant asserted the police did not have consent or probable cause to search the vehicle and the search was not a valid search incident to defendant's arrest. Additionally, relying on *People v. Clark*, 394 Ill. App. 3d 344 (2009), defendant argued Huebner's search was not a valid inventory search because there was no cognizable reason to impound the vehicle, since it was legally parked and not a traffic or safety hazard.

¶ 8                          C. The Hearing on Defendant's Motion

¶ 9                             1. *The Evidence Presented*

¶ 10        The hearing on defendant's motion took place on December 19, 2022. Huebner was the only witness. The trial court admitted exhibits, including several written department policies, a photograph of the front of the vehicle (which showed no front license plate) taken in front of Coffie's residence, a tow report prepared by Officer Herscher, and an evidence booking form for the firearm prepared by Huebner, which was appended to the tow report. The evidence showed the following.

¶ 11        On May 13, 2022, Huebner responded to a shots-fired call at Coffie's residence. About a year earlier, Coffie was arrested for having two firearms in the residence. Coffie was not at the residence when the police responded to the shots-fired call. Eventually, he returned and gave the police permission to enter. Defendant was inside the house. While investigating the scene, the police observed the residence had been struck multiple times. They found shell casings both "right in front of the front patio" and in the street, which the court found indicative of a "crossfire shooting."

¶ 12        Around midnight on June 10, 2022, Detective Koerner called Huebner and told him that defendant and Coffie were at a gas station in a Chevrolet Sonic. Huebner drove to an intersection

3

near the gas station. He observed the vehicle leave the gas station and drive past him. The vehicle did not have a license plate attached to its front. See 625 ILCS 5/3-413(a) (West 2022) (a motor vehicle must have a registration plate attached to its front and rear). At the time, Huebner could see "approximately four" occupants inside but could not confirm who was in the vehicle or who was driving.

¶ 13 Because of the equipment violation, Huebner followed the vehicle, intending to stop it. The vehicle turned north and drove a few hundred feet. Huebner activated his lights. The vehicle approached an intersection controlled by a traffic light. The vehicle disregarded the red light and a stop sign at the next intersection and continued driving with increasing speed. Huebner did not pursue the vehicle because the equipment violation did not meet the department's criteria for pursuit, that is, it was not a forcible felony.

¶ 14 Huebner contacted Lieutenant Latham, and they agreed to position themselves near Coffie's residence in case the vehicle proceeded there. Huebner parked in an alley behind the residence, and Latham parked at a nearby park. Seven minutes after the attempted stop, the vehicle arrived and parked legally on the street in front of the residence. The vehicle was not impeding traffic and was not a safety risk.

¶ 15 The officers walked toward the vehicle, which now had three occupants. Huebner saw defendant outside the rear driver's side of the vehicle and Coffie outside the rear passenger's side. Foy remained in the driver's seat. Defendant's back was turned to Huebner, and defendant was leaning into the vehicle. Huebner could not see defendant's hands but saw his arms moving; it appeared defendant was moving items around in the back seat. Huebner asked defendant to step away from the vehicle and patted him down. After finding no weapons on defendant, Huebner asked him to stand at the back of the vehicle.

4

¶ 16        Huebner asked Foy to exit the vehicle. He patted her down, directed her to the back of the vehicle, and told her the vehicle was going to be towed "[f]or an Article 36 seizure for aggravated fleeing and eluding." Huebner did not tell defendant or Foy that they were being arrested at this time. Huebner's conversation with Foy was recorded on his body camera, and Huebner reviewed the recording before the hearing. Without objection, Huebner testified the recording confirmed he told Foy the reason for the tow was an "Article 36 seizure." The State did not offer the recording.

¶ 17        Defense counsel asked Huebner whether he "began to search the car" after he told Foy he was seizing the vehicle. Huebner corrected counsel, stating he began to "inventory" it. Defense counsel elicited no further details concerning the conduct of the search itself from Huebner and never elicited what evidence was found during it. Before cross-examination, the trial court asked Huebner questions and established the firearm was found on the rear driver's side seat. The State elicited a few more details from Huebner about his search. The State asked if Huebner found "anything of interest" in the front of the vehicle, and Huebner responded he did not. In the rear of the vehicle, he found a large bag on the seat behind the driver. Huebner "checked" and "removed" the bag, revealing the firearm, which had a round in the chamber and "some in a magazine." Huebner alerted the other officers to the firearm's presence and walked toward the back of the vehicle, and defendant said, "It's mine." Huebner was not asked whether he continued his inventory after finding the firearm.

¶ 18        Huebner confirmed he requested the tow and his initial purpose for it was the vehicle's use in the fleeing and eluding offense. According to Huebner, when a vehicle is towed, an officer typically fills out a tow report, which includes the reason for the tow. Huebner did not personally fill out the tow report in this case. He testified he saw the report and the reasons stated on the report were "[a]ggravated fleeing and eluding and a firearm arrest."

5

¶ 19    Defense counsel confronted Huebner with the tow report, which was prepared by Officer Herscher. The tow report was prepared on a form that has "ADMIN. SEIZURE" printed at the top. Huebner's name appears nowhere on the tow report. Nor does the report contain any reference to the offense of aggravated fleeing and eluding. Instead, it states the vehicle "was towed due to weapons arrest." Huebner testified he was not aware the report said the vehicle was towed due to a weapons arrest rather than aggravated fleeing and eluding.

¶ 20    Huebner arrested defendant for aggravated unlawful use of a weapon at about 12:20 a.m., a few minutes after completing his inventory. Coffie was arrested on a Will County warrant. The officers detained Foy but never arrested her. Foy told the officers she had been picked up after the vehicle fled from Huebner. The officers did not arrest anyone for aggravated fleeing and eluding because they were not able to determine who was driving when the vehicle fled.

¶ 21    Huebner identified several written department policies. One of those policies, a procedure for administrative forfeiture, permits officers to impound a vehicle when *the driver* is arrested for possessing a firearm, unless the driver gives an occupant, who can legally drive, permission to take the vehicle. Also admitted were the department's general tow policy (Policy 510) and its asset-forfeiture policy (Policy 606). Huebner testified he was acting under Policy 606, not Policy 510, when he decided to seize the vehicle. Under Policy 606, he could seize the vehicle because he had observed its use in the commission of aggravated fleeing and eluding. Huebner provided no further testimony regarding his compliance with Policy 606.

¶ 22                              2. *Arguments and Ruling*

¶ 23    At the conclusion of Huebner's testimony, the court asked whether any more evidence would be presented or whether the parties wished to argue. Both parties stated they had no more evidence to present and asked the court to admit exhibits.

6

¶ 24 Defendant relied primarily on *Clark*, 394 Ill. App. 3d 344. Essentially, he argued that because the vehicle was legally parked on the street, it should not have been towed under Policy 510. Further, the State had not shown the purpose of the search was to protect Foy's property, to guard the police from danger, or to protect the police from fraudulent claims of lost, stolen, or vandalized property. Moreover, the evidence showed the inventory search "was pretext for an investigatory stop," as Huebner testified he began following the vehicle after receiving information that two shooting suspects were inside the vehicle. According to defendant, the equipment violation "was pretext for the reason that they decided to search the car."

¶ 25 The State responded that Huebner was justified in seizing the vehicle under Policy 606 and article 36 of the Code. Specifically, Huebner had probable cause to seize the vehicle because he had observed it being used in the offense of aggravated fleeing and eluding. During argument, the court asked the State whether the aggravated fleeing and eluding offense gave Huebner "probable cause" to inventory the car, and the following discussion ensued:

"[THE STATE]: Probable cause for them to inventory the car. There's also probable cause to look into the car itself.

THE COURT: Well, initial—I mean, I know they do it to make sure nothing's stolen or taken or moved, right?

[THE STATE]: Right. Right. But based on the defendant's pre—his actions, Judge, I think the officer had reasonable belief to go looking into the car itself, what [defendant] was doing in the car at that time.

[DEFENSE COUNSEL]: Initially.

[THE STATE]: And that's also another thing, Judge. It's another basis.

THE COURT: Are you arguing incident to arrest?

7

[THE STATE]: Not incident to arrest. Just incident to the investigation, Judge."

¶ 26    Defendant responded that, notwithstanding the fleeing and eluding offense, the police should not have towed the vehicle because it was legally parked. Further, defendant noted, Huebner said to Foy, "we're towing your car," not "we're going to forfeit your car." Thus, he contended, the asset-forfeiture policy was not at issue.

¶ 27    The court asked to see the tow report and noted it said the vehicle "was towed due to a weapons arrest." The court remarked, "It would have been much easier if [Officer Herscher] had put the right thing on there." If the vehicle was actually seized for fleeing and eluding, Herscher "should have put aggravated fleeing and eluding on the tow report."

¶ 28    The court then raised the issue of whether the State moved forward with forfeiture proceedings on the vehicle. The State responded it did not know but what ultimately happened with the forfeiture did not matter, because, at the time of the search, Huebner was acting according to the department's asset-forfeiture policy. Defense counsel later told the court that her computer search revealed the State never initiated forfeiture proceedings against the vehicle.

¶ 29    The court ruled in open court:

"Based on [*Clark*], *** I am going to grant the motion. I believe it's a pretext. [Defendant] is at—he and the other three are at [the gas station]. This officer who seemed to be very credible, gets notice that, hey, [Coffie] and [defendant] just left [the gas station]. And by the way, we believe they're involved in the shooting a month ago. So they follow him. They follow that car and they lose that car even after there's—there's probable cause for aggravated fleeing and eluding, although they don't know who the driver is and they never do know who the driver is, and they see the car parked legally in front of [Coffie's] address. And they go over there because at the—after the shooting on May 13th they found

8

[defendant] and [Coffie] at that house. So they go there to see if they can find them. So it seems to me that they are following up on the shooting on May 13th. And it might have worked if they had an invest—investigative alert which is still legal, I believe, and—but it—it sure sounds like a pretext for me. When you look at the procedure for administrative forfeiture, you look at the towing report of which Officer Herscher [*sic*] doesn't write anything about the aggravated fleeing and eluding. Vehicle was towed because of weapons arrest.

I guess you can appeal me and see what the—so I've granted the motion to suppress."

¶ 30    The State moved to reconsider. The court denied the motion, and this appeal followed.

¶ 31                                II. ANALYSIS

¶ 32    On appeal, the State contends Huebner's inventory search was valid and the trial court erred by granting defendant's motion to suppress. Specifically, the State argues the vehicle was properly seized and inventoried under article 36 of the Code and Policy 606 where Huebner had probable cause to believe the vehicle had been involved in the offense of aggravated fleeing and eluding. Alternatively, the State contends Huebner had probable cause to search the vehicle under the automobile exception to the fourth amendment. The State maintains that it forfeited its alternative argument by failing to raise it in the trial court and asks us to grant relief under the plain-error doctrine and Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967).

¶ 33                            A. Standard of Review

¶ 34    We apply a bifurcated standard of review to rulings on motions to suppress. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). We review the trial court's factual findings against the manifest weight of the evidence, meaning we will disturb those findings "only if the opposite

9

conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). However, we are free to "undertake [our] own assessment of the facts in relation to the issues and may draw [our] own conclusions when deciding what relief should be granted." *Luedemann*, 222 Ill. 2d at 542. Accordingly, we review the ultimate issue—whether suppression is warranted—*de novo*. *Id.* And we may affirm on any basis supported by the record. *People v. Aljohani*, 2022 IL 127037, ¶ 28.

¶ 35        The defendant bears the burden of proof at a hearing on his motion to suppress. *People v. Brooks*, 2017 IL 121413, ¶ 22. He "must make a *prima facie* case that the evidence was obtained by an illegal search or seizure," meaning he "has the primary responsibility for establishing the factual and legal bases for the motion to suppress." *Id.* If the motion's basis is an allegedly illegal search, the defendant must show there was a search and the search was illegal. *Id.* If the defendant meets this initial burden, the State may present evidence to counter the defendant's *prima facie* case. *Id.* The ultimate burden of proof, however, remains with the defendant. *Id.*

¶ 36                              B. The Fourth Amendment and Its Relevant Exceptions

¶ 37        The fourth amendment protects a person's right to be free from unreasonable searches and seizures. U.S. Const., amend. IV; see Ill. Const. 1970, art. I, § 6. Subject to a few well-recognized exceptions, the fourth amendment generally requires the government to obtain a warrant, supported by oath and probable cause, before searching or seizing a person's property. U.S. Const., amend. IV; see Ill. Const. 1970, art. I, § 6.

¶ 38        The record establishes defendant met his initial burden to establish a *prima facie* case for suppression, as there is no question Huebner searched the vehicle without a warrant. *People v. Gipson*, 203 Ill. 2d 298, 307 (2003). Thus, the burden shifted to the State to prove an exception to

10

the fourth amendment's warrant requirement applied. *People v. Gill*, 2018 IL App (3d) 150594, ¶ 98 (citing *Chimel v. California*, 395 U.S. 752, 762 (1969)).

¶ 39 The State relies on two exceptions: (1) inventory searches of lawfully impounded vehicles conducted per standard police procedure (*South Dakota v. Opperman*, 428 U.S. 364 (1976)), and (2) searches of automobiles when an officer has probable cause to believe the automobile may contain contraband or evidence of a crime (*Carroll v. United States*, 267 U.S. 132 (1925)).

¶ 40 C. Inventory Search

¶ 41 The State argues Huebner's search was a valid inventory of a lawfully impounded vehicle, and therefore, the trial court erred by granting defendant's motion. Specifically, the State asserts Huebner's seizure of the vehicle was proper under both article 36 of the Code and the department's asset-forfeiture policy, and because the seizure was valid, the search was valid. The State, relying on *People v. Partin*, 2022 IL App (2d) 210445, ¶ 42, maintains our inquiry should go no further than determining whether the seizure of the vehicle was lawful. If our inquiry goes further, the State continues, the record demonstrates Huebner's search was constitutionally reasonable.

¶ 42 Contrary to his primary contention in the trial court, defendant concedes Huebner's seizure of the vehicle was lawful, because Huebner had probable cause to believe the vehicle had been used to commit aggravated fleeing and eluding. He nevertheless maintains we should affirm the trial court's order because the record does not establish that Huebner's inventory search—a constitutionally distinct action—was reasonable. See *id.* ¶ 40. Specifically, the record is devoid of any evidence that Huebner performed the inventory in accord with department procedures. Moreover, the trial court's finding that Huebner's stated reason for the search was pretext for an investigatory search was not against the manifest weight of the evidence.

¶ 43 1. *The Fourth Amendment Does Not Prohibit Warrantless Inventories*

11

¶ 44         The fourth amendment does not prohibit a warrantless inventory search of a lawfully impounded vehicle (*Opperman*, 428 U.S. at 372; *Gipson*, 203 Ill. 2d at 304), provided the police act according to standardized police procedure when performing the inventory (*Colorado v. Bertine*, 479 U.S. 367, 372-74 (1987)). An inventory search ordinarily serves three objectives: (1) "the protection of the owner's property while it remains in police custody"; (2) "the protection of the police against claims or disputes over lost or stolen property"; and (3) "the protection of the police from potential danger." *Opperman*, 428 U.S. at 369.

¶ 45         The "[i]mpoundment—or seizure—of a vehicle is separate and distinct from the inventory—or search—of that vehicle." *Partin*, 2022 IL App (2d) 210445, ¶ 40. Both "must be constitutionally reasonable." *Id.* Thus, the threshold inquiry when considering the validity of an inventory search is whether the vehicle's impoundment was lawful. *Id.* If the seizure was lawful, the court considers whether the ensuing inventory search was constitutionally reasonable. *Id.* ¶ 57.

¶ 46         Typically, a valid inventory search has three requirements. *People v. Hundley*, 156 Ill. 2d 135, 138 (1993). First, "the original impoundment of the vehicle must be lawful." *Id.* Second, "the purpose of the inventory search must be to protect the owner's property and to protect the police from claims of lost, stolen, or vandalized property and to guard the police from danger." *Id.* Third, "the inventory search must be conducted in good faith pursuant to reasonable standardized police procedures and not as a pretext for an investigatory search." *Id.*

¶ 47                            2. *This Case*

¶ 48         This case does not present a typical inventory search where an initial tow was made pursuant to the police's community-caretaking function and where the inventory served the three objectives recognized in *Opperman*. See *Opperman*, 428 U.S. 364; *Hundley*, 156 Ill. 2d 135; *Clark*, 394 Ill. App. 3d 344. Rather, Huebner seized the vehicle for asset forfeiture, meaning the vehicle

12

was not seized pending return to Foy but rather pending disposition to a third party at auction. 720 ILCS 5/36-7 (West 2022). In this regard, the inventory authorized by article 36 and Policy 606 arguably serves a different purpose than inventories made in nonforfeiture scenarios. That is, the inventory serves to ready the vehicle for the ultimate end of the process—disposition at public auction—by removing property from the vehicle that is not subject to forfeiture. Indeed, article 36 expressly recognizes that personal property located within a seized vehicle should be returned to the owner unless it is mechanically or electrically coupled with the vehicle or is subject to forfeiture, evidence in the case, or contraband. See *id.* § 36-2.2(b).

¶ 49    Given this distinction, it is not clear how *Hundley*'s test for assessing inventory searches— specifically the second requirement, relating to the search's purpose—applies in the present context. In this vein, the State maintains our inquiry should go no further than determining whether the initial seizure for forfeiture was valid. The State relies solely on *Partin* to support this assertion.

¶ 50    *Partin* does not support the proposition that our inquiry ends upon determining the lawfulness of the vehicle's seizure. Though the court in *Partin* recognized that an inventory search is justified when the police impound a vehicle based on a cognizable reason (*Partin*, 2022 IL App (2d) 210445, ¶ 42), the court did not end its analysis there. Recognizing that both the seizure and the inventory search must be constitutionally reasonable, the court assessed the reasonableness of the officer's inventory search by considering his testimony regarding his conduct of the inventory. *Id.* ¶¶ 40, 57-58.

¶ 51    This is consistent with *Cooper v. California*, 386 U.S. 58, 61 (1967), wherein the United States Supreme Court explained the fact the vehicle was lawfully seized under an asset-forfeiture statute did not dispense with the constitutional requirements of any resulting search. Regardless of the reason for the seizure, the subsequent search must be reasonable. *Id.* An inventory search's

13

reasonableness is established when the officer's performance of the inventory comports with reasonable, standard police procedure (*Partin*, 2022 IL App (2d) 210445, ¶ 58), and the procedure is administered in good faith and not as pretext for an investigatory search (*Hundley*, 156 Ill. 2d at 138).

¶ 52     In this case, the trial court granted defendant's motion based on its finding that Huebner's invocation of article 36 of the Code and Policy 606 was pretext for an investigatory search. Based on the record before us, we cannot find this finding was against the manifest weight of the evidence. Indeed, the evidence presented supports a conclusion that Huebner never intended to seize the vehicle for asset forfeiture and instead used the asset-forfeiture procedure as a ruse to conduct a search for contraband. See *Florida v. Wells*, 495 U.S. 1, 4 (1990) (noting an inventory search must not be a ruse for general rummaging to discover incriminating evidence).

¶ 53     The record shows that Detective Koerner called Huebner shortly after midnight and told him that defendant and Coffie, both purported suspects in the May 2022 shooting, were inside a vehicle at the gas station. There, of course, was nothing unlawful about either person's presence at the gas station. Nevertheless, Huebner drove to the gas station, apparently hoping to make contact with defendant and Coffie. These facts supported the trial court's conclusion that Huebner's intent from the outset was to investigate the May 2022 shooting.

¶ 54     Moreover, the record does not establish Huebner, in fact, inventoried the vehicle in accordance with procedure. To be sure, Huebner told Foy he was seizing the vehicle for asset forfeiture and, at the hearing on defendant's motion, corrected defense counsel when she asked him whether he "searched" the car, stating he "inventoried" it. Further, Huebner testified he looked in the front and rear passenger compartments of the vehicle, "checked" and "removed" a large bag, and discovered the firearm on the rear driver's side seat. The State, however, elicited no further

14

evidence from which the court could conclude Huebner performed an inventory. The record is devoid of any indication that Huebner prepared a written inventory form, as required by article 36 of the Code. See 720 ILCS 5/36-1.3(b), 36-1.4 (West 2022). The record is devoid of any indication Huebner completed the applicable seizure forms and presented them to Foy, as required by Policy 606. The record is devoid of any indication Huebner completed and submitted a report and original seizure forms within 24 hours, as required by Policy 606. And the record is devoid of any indication that Huebner forwarded the original seizure forms and related reports to the department's forfeiture reviewer within two days of the seizure, as required by Policy 606. In fact, the only seizure-related document that was presented in this case was a tow report for an administrative seizure, a wholly different policy that was inapplicable because *the vehicle's driver*, Foy, was not arrested.

¶ 55        Further, the record shows the State never commenced asset-forfeiture proceedings against the vehicle. Admittedly, the seizing officer has no control over whether the state's attorney commences asset-forfeiture proceedings, and the state's attorney has broad discretion to choose which cases to pursue. *Id.* § 36-2(a). But as noted, the record is devoid of any indication that Huebner took the steps required of him to start the forfeiture process. Here, it was the State's burden to show Huebner followed procedure, but the State never elicited any testimony that he in fact did so.

¶ 56        Under these circumstances, we conclude the trial court reasonably concluded that Huebner's stated basis for the inventory—asset forfeiture—was merely pretext for conducting an investigatory search. And because this finding was not against the manifest weight of the evidence, we find the trial court properly granted defendant's motion to suppress evidence.

15

¶ 57        In reaching this conclusion, we reject the State's argument that because the trial court found Huebner's testimony "very credible," its finding the procedures were used as pretext for an investigatory search must therefore be against the manifest weight of the evidence. We disagree. The trial court could reasonably find Huebner's testimony credible while at the same time drawing an inference that Huebner's invocation of asset forfeiture was pretext for an investigatory search. *People v. Craine*, 2020 IL App (1st) 163403, ¶ 27 (the inferences to be drawn from evidence is the trial court's prerogative).

¶ 58        We also reject the State's argument that the tow report and the absence of forfeiture proceedings do not weigh in favor of the court's finding of pretext. In support, the State relies on *People v. Ocon*, 221 Ill. App. 3d 311 (1991). In *Ocon*, the court held that an officer's subjective motivation for performing a search did not render unreasonable an otherwise valid inventory search. *Id.* at 314-16. In doing so, it noted the "officers' failure to complete the appropriate forms after the fact of the inventory" did not "affect the objective reasonableness of the police procedures themselves." *Id.* at 316.

¶ 59        *Ocon*, decided in 1991, predates *Hundley*, which was decided in 1993. And in *Hundley*, the supreme court expressly put the matter of the searching officer's intent—that is, whether the seizure was used as a pretext for an investigatory search—at issue in inventory search cases. *Hundley*, 156 Ill. 2d at 138; see *Whren v. United States*, 517 U.S. 806, 811-812 (1996) (distinguishing inventory search cases such as *Bertine* and *Wells* and recognizing pretext—an officer's investigatory motive—is still a relevant consideration in those contexts); 1 Wayne R. LaFave, Search and Seizure § 1.4(f) (6th ed. 2020) (commenting that *Whren* left open claims of pretext in inventory-search cases). To the extent *Ocon* is inconsistent with *Hundley* on this issue, we follow *Hundley*. Under *Hundley*, the trial court was required to consider whether Huebner's

16

stated reason was pretext—which necessarily required it to consider his intent—and we cannot conclude its finding was against the manifest weight of the evidence.

¶ 60                                    D. Automobile Exception

¶ 61        Alternatively, the State argues Officer Huebner's search was valid under the automobile exception to the fourth amendment, because Huebner had probable cause, based on defendant's "furtive" movements and his knowledge regarding defendant's involvement in the May 2022 shooting, to believe the vehicle contained contraband.

¶ 62        The State concedes it forfeited this argument by failing to raise it in the trial court. The State nevertheless asks that we review the issue under the plain-error doctrine. See Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). The State cites several cases in which the appellate court reviewed an issue forfeited by the State. See *People v. Lucy*, 204 Ill. App. 3d 1019, 1032-34 (1990); *People v. Oswald*, 106 Ill. App. 3d 645, 649-50 (1982); *People v. Joyner*, 57 Ill. App. 3d 948, 952-53 (1978); *People v. Smith*, 42 Ill. App. 3d 731, 733 (1976).

¶ 63        Defendant responds the State went beyond mere forfeiture; it invited the error. See *People v. Harvey*, 211 Ill. 2d 368, 385 (2004) (the doctrine of invited error goes beyond mere waiver and bars a party from requesting to proceed in one manner then later arguing that the course of action was error). Even if the State did not invite the error, he continues, plain-error review is not appropriate in this case. On this second point, defendant notes this court has recently found unpersuasive the State's attempt to invoke the plain-error doctrine. See *People v. Bowden*, 2019 IL App (3d) 170654, ¶¶ 14-21. And in any event, the State did not sufficiently develop the trial record to address the forfeited argument. See *People v. McAdrian*, 52 Ill. 2d 250, 253-55 (1972).

¶ 64        We need not decide whether plain-error review is available to the State, because we reject the State's concession that it forfeited the issue by failing to raise it in the trial court. See *People*

17

*v. Horrell*, 235 Ill. 2d 235, 241 (2009). The record belies the State's concession. During argument on the motion to suppress, the State argued Huebner, based on his observation of defendant's actions, had "probable cause to look into the car itself," not incident to arrest but "incident to the investigation." The State made clear this was an alternative basis on which the court could deny the motion. The State's argument, though underdeveloped, was sufficient to preserve the issue for review. See *People v. Spencer*, 408 Ill. App. 3d 1, 9 (2011) (citing *People v. Galan*, 229 Ill. 2d 484, 499 (2008) (a reviewing court may decline to apply forfeiture to the State's arguments where they were raised in the trial court, even if the argument was not fully developed at that time)).

¶ 65        Further, we reject defendant's argument that the State invited the error. Defendant bases his argument on a single instance during the hearing on the motion, when the trial court asked the State, "Would you agree with me if [the police] had stopped that car only for a weapon would that—would—would there be a granting of the motion to suppress? Probably." The State responded, "If they stop it—if there's no fleeing and eluding, I agree with Your Honor."

¶ 66        It is not entirely clear how the State's agreement with the trial court's hypothetical question constitutes an invitation of the error claimed here. The State's response to the court's question was nothing more than an acknowledgement that the equipment violation, without more, would not have justified a search. See, *e.g.*, *People v. Jones*, 215 Ill. 2d 261, 271 (2005). Regardless, the State in fact argued Huebner had independent probable cause to search the vehicle based on defendant's actions. We therefore conclude the State's argument is not barred by the doctrine of invited error.

¶ 67        That said, we conclude the State forfeited its argument regarding the automobile exception on a different basis: it failed to develop its argument and cite pertinent authority in support. Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) "requires a party's brief to present argument, which must contain the contentions of the party and be supported by citation to the authority and

18

the pages of the record relied on." *In re H.B.*, 2022 IL App (2d) 210404, ¶ 41. A bare contention, unsupported by argument and citation of pertinent authority, does not meet the requirements of Rule 341(h)(7) and is grounds for finding an argument forfeited. *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 12. Indeed, this court is not a repository into which an appellant may foist the burden of argument and research. *In re Marriage of Reicher*, 2021 IL App (2d) 200454, ¶ 33.

¶ 68　　　　Aside from a recitation of the facts and an unnecessary discussion of forfeiture and the plain-error doctrine (*supra* ¶ 64), the State's argument concerning the automobile exception consists of a single paragraph. The State notes three facts it deems relevant to its argument and cites a single case for the general proposition that furtive movements may give rise to probable cause when they are invested with guilty significance. *People v. Collins*, 53 Ill. App. 3d 253, 255 (1977). It then concludes as follows, without citing authority:

　　　　"Here, even if this court were to assume that Huebner did not have a reason to be fearful of defendant having a weapon due to the pat down revealing no evidence of a firearm, probable cause existed based upon Huebner's knowledge of defendant's and Coffie's involvement with firearms at the same residence the vehicle was now located, coupled with the furtive movements defendant made *after* the pat down. Certainly, it would be reasonable for Huebner to believe defendant was attempting to conceal contraband by going back into the vehicle. As such, the trial court erred when it granted defendant's motion to suppress." (Emphasis added.)

¶ 69　　　　Contrary to the State's assertion, the record confirms Huebner observed defendant's purported furtive movements while walking toward the vehicle and *before* the police performed protective pat downs of the vehicle's occupants. In any event, the State has not provided this court

19

with a reasoned argument as to *why* knowledge of defendant's suspected involvement in the May 2022 shooting would allow a reasonable officer to assign guilty significance to defendant's movements inside the vehicle. Further, other than its reference to a general proposition of law, the State has failed to cite any pertinent authority to support its position. The State has therefore forfeited its argument that Huebner had probable cause to search based on defendant's furtive movements. *Hall*, 2012 IL App (2d) 111151, ¶ 12.

¶ 70                             III. CONCLUSION

¶ 71        For the reasons stated, we affirm the judgment of the circuit court of Kankakee County.

¶ 72        Affirmed.

*People v. Smith*, 2023 IL App (3d) 230060

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kankakee County, No. 22-CF-332; the Hon. Kathy S. Bradshaw-Elliott, Judge, presiding. |
| **Attorneys for Appellant:** | James Rowe, State's Attorney, of Kankakee (Patrick Delfino, Thomas D. Arado, and Nicholas A. Atwood, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| **Attorneys for Appellee:** | James E. Chadd, Santiago A. Durango, and Andrew J. Boyd, of State Appellate Defender's Office, of Ottawa, for appellee. |